this court in State v. Matheny, 194 La. 198, 193 So. 587, it is my opinion that the trial judge in overruling the plea to the jurisdiction properly held that the offense, if committed, had occurred in the Parish of East Baton Rouge, where the trial must take place (unless there is a change of venue) under the express provisions of Section 9 of Article I of the Constitution of 1921.

141 So.2d 366

**TEXAS AND NEW ORLEANS RAILROAD COMPANY**

v.

**LOUISIANA PUBLIC SERVICE COMMISSION et al.**

No. 45934.

April 30, 1962

Rehearing Denied June 4, 1962.

Jack P. F. Gremillion, Atty. Gen., Joseph H. Kavanaugh, Sp. Counsel, for defendants-appellants.

Chaffe, McCall, Phillips, Burke, Toler & Hopkins, William E. Crawford, New Orleans, for plaintiff-appellee.

SUMMERS, Justice.

The Texas and New Orleans Railroad Company applied to the Louisiana Public Service Commission to close the Railroad's agency station in the Town of Patterson. The commission denied the application, and the railroad appealed to the appropriate district court which set aside the commission's order, and granted the railroad au-

thority to close and discontinue its agency station at Patterson. The commission is appealing to this court.

Patterson is situated in the southern part of the state on Bayou Teche in St. Mary Parish, approximately 9 miles east of Bayou Sale, and 6.6 miles west of Morgan City. Bayou Sale and Morgan City each have agency stations. It is traversed by U. S. Highway 90 and the applicant's railroad. A motor freight affiliate of the railroad also serves the community. The population of Patterson according to the 1950 census was 1,938; the 1960 census reveals the population to be 2,923. There is evidence that St. Mary Parish and the area surrounding Patterson has grown considerably in the last ten years and continues to grow in population. There are one hundred business establishments in the Patterson area now served by the station located there, a substantial majority of which oppose the station closing. The Town of Patterson and the Police Jury of St. Mary Parish, through the Board of Aldermen and Police Jury, respectively, have officially opposed the station's closing, and many other interested parties from the area appeared as opponents.

The railroad contends that its analysis of the business handled at the station from April through March 1960 discloses a loss of $2,026.60 for that period. The total revenue assigned to this station for the period is $9,487.26; costs of station operation is shown to be $6,023.83; costs of handling freight exclusive of station operations is $3,445.08. Additionally, there is assigned to this station the cost of handling freight attributable to this station and incurred by Southern Pacific Transport, the motor truck line affiliate of the railroad, in the sum of $2,044.95—the total expense being $11,513.86, as opposed to the income of $9,487.26, the difference being a loss by the railroad's analysis of $2,026.60 noted above.

Lagonda, designated by the railroad as a non-agency station, is located, according to the testimony, approximately 2½ miles from the Patterson agency station. The former is an old plantation name and the boundaries of the locality so designated cannot be precisely defined. The Patterson community overflows into the areas surrounding Lagonda; these two places are contiguous and, according to some of the testimony, one continuous community. The railroad has credited a total revenue of $65,111.32 to the non-agency station at Lagonda, which, after deducting $45,656.05 as the cost of handling freight there, leaves a net revenue of $19,455.27 attributed to that station according to the railroad's analysis.

Those opposing the railroad contend that the revenue derived from the Lagonda station should be attributed to the Patterson station. If this were done the Patterson station would disclose a substantial net

revenue which would negative any justification for its closing.

The distance between the Patterson station and the Lagonda locality forms the only apparent basis for the railroad's refusal to attribute the revenue derived at Lagonda to the Patterson station, although the agent at Patterson does handle the business at Lagonda. Moreover, in spite of the fact that the agent at Patterson handles the Lagonda traffic, the railroad in its analysis has not attributed any portion of the Patterson expense to the Lagonda station. If this were done, the reduction in the costs of station operations at Patterson would undoubtedly substantially reduce the net loss there. No evidence is available concerning the expense of operations at Patterson which should be attributable to Lagonda.

It seems quite evident that the operations at Patterson and Lagonda are closely related and so entwined as to make it difficult to conclude that it is other than one operation. The distance between them is not appreciable, especially when we consider the statement of the commission in this case that "There are * * * innumerable instances in this state where a railroad agent takes care of a radius of as much as twenty miles from his station." To fail to extend this station's service two and one-half miles would be to deny public service and convenience expected of that station. It would be difficult in fact to say that the public service performed by the agent at Patterson is not extended to the areas near and around Lagonda, and to fail to attribute the Lagonda revenue to the Patterson agency station would be unrealistic. So far as we are able to understand from the record, no agency station is being credited with the Lagonda revenue although the Patterson agency station serves the Lagonda station's operations. Consequently, from the point of view of the physical locality and characteristics of the Patterson-Lagonda area, the two localities being so closely related, the public in that area availing itself of the facilities of the railroad, and the users of the Patterson agency station being interspersed generally throughout the area of both, no proper basis for the separate analysis adopted by the railroad is substantiated by this record.

■ Therefore, crediting the Lagonda net revenues of $19,455.27 to the Patterson station, which showed a loss of $2,026.60, results in a net revenue attributable to the Patterson station of $17,428.67. These revenues are an accurate barometer of the public's need for the Patterson station, and it is, of course, the public convenience and necessity with which we are concerned. The revenues thus reflect a need so apparent that no evidence in this record serves to effectively reduce its probative

force. The railroad, as the applicant for the proposed discontinuance, has the burden of establishing by adequate evidence that the public convenience and necessity no longer require the Patterson agency station.[1] They have relied primarily upon their analysis of the revenues, expenses and costs. Their error in failing to attribute any of the Lagonda revenue to the Patterson station, and our insistence upon the contrary analysis which we feel is more consonant with the realities of the case, leaves their proposal threadbare and without substance.

In this instance, we find no abuse of the commission's power, nor any cause for substituting the court's judgment for that of the commission. The order of the commission was not contrary to the evidence and no error of law was committed. Rubion Transfer & Storage Co. v. Louisiana Public Service Commission, 240 La. 440, 123 So.2d 880; Gulf States Utilities Company v. Louisiana Public Service Commission, 222 La. 132, 62 So.2d 250. The commission's denial of the railroad's application was therefore correct and should have been affirmed.

For the reasons assigned, the judgment appealed from is reversed and the suit is dismissed at appellee's cost.

1. Missouri Pacific R. Co. v. Louisiana Public Service Commission, 241 La. 242, 128 So.2d 644; Chicago & E. I. Ry. Co.

v. Illinois Commerce Commission, 333 Ill. 215, 164 N.E. 147; 74 C.J.S. Railroads § 68.